UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**BLUE TRADING, LLC.,**

      **Plaintiff**                              **Case No.**

**V.**

**LEXMARK INTERNATIONAL, INC.**

      **Defendant,**
_____/

## COMPLAINT

Plaintiff BLUE TRADING, LLC., ("BLUE TRADING"), for its complaint against Defendant Lexmark International, Inc. ("Lexmark") alleges as follows:

### I.  NATURE OF THIS ACTION

1. This action arises under 28 U.S.C. §§ 1331, 1338, 2201, and 2202, and the United States Patent Laws at 35 U.S.C. §§ 1 et seq.

2. BLUE TRADING brings this action seeking a declaration that BLUE TRADING does not infringe any valid claim of the following U.S. Patents ("the Patents-in-Suit").  True and correct copies are attached as Exhibits 1-21.

| Patent No. | Abbreviation | Title | Exhibit No. |
|---|---|---|---|
| 5,337,032 | ("the '032 Patent") | Reduced Component Toner Cartridge | 1 |
| 5,632,169 | ("the '169 Patent") | Multiple Function Encoder Wheel for Cartridges Utilized In An Electrophotographic Output Device | 2 |
| 5,758,231 | ("the '231 Patent") | Venting Plug In Toner Cartridge | 3 |
| 5,758,233 | ("the '233 Patent") | Toner Cartridge With Locating [Surfaces] On Photo conductor Shaft | 4 |
| 5,768,661 | ("the '661 Patent") | Toner Cartridge With External Planar Installation Guides | 5 |
| 5,802,432 | ("the '432 Patent") | Toner Cartridge with Housing and Pin Construction | 6 |

| Patent No. | Abbreviation | Title | Exhibit No. |
|---|---|---|---|
| 5,875,378 | ("the '378 Patent") | Toner Cartridge With Hopper Exit Agitator | 7 |
| 5,995,772 | ("the '772 Patent") | Imagine Apparatus Cartridge Including An Encoded Device | 8 |
| 6,009,291 | ("the '291 Patent") | Control of Photosensitive Roller Movement | 9 |
| 6,078,771 | ("the '771 Patent") | Low Friction Doctor Blade | 10 |
| 6,397,015 | ("the '015 Patent") | Encoded Device Having Positioned Indicia For Use With A Toner Cartridge | 11 |
| 6,459,876 | ("the '876 Patent") | Toner Cartridge | 12 |
| 6,487,383 | ("the '383 Patent") | Dynamic End-Seal For Toner Development Unit | 13 |
| 6,496,662 | ("the '662 Patent") | Optical Toner Low Sensor | 14 |
| 6,678,489 | ("the '489 Patent") | Two Part Cartridges With Force Biasing By Printer | 15 |
| 6,816,692 | ("the '692 Patent") | Support Assembly For Roller Including Roller Body And Support Shaft | 16 |
| 6,871,031 | ("the '031 Patent") | Coupling Mechanism For A Two Piece Printer Cartridge | 17 |
| 6,879,792 | ("the '792 Patent") | Two Part Cartridge's with Force Biasing By Printer | 18 |
| 7,139,510 | ("the '510 Patent") | Two Part Cartridges With Force Biasing By Printer | 19 |
| 7,233,760 | ("the '760 Patent") | Method and Device for Doctor Blade Retention | 20 |
| 7,305,204 | ("the '204 Patent") | Two Part Cartridges With Force Biasing By Printer | 21 |

## II.   THE PARTIES

3.   Plaintiff BLUE TRADING, LLC., is a Florida Limited Liability Company having its principal place of business at 9272 NW 101st Street, Miami FL 33178. BLUE TRADING, LLC., conducts business in Miami-Dade County, Florida under its name.

4.   BLUE TRADING sources and acquires, both in the United States ("Domestically") and outside of the United States ("Internationally"), used empty spent genuine toner and inkjet cartridges ("Cartridges") for resale Domestically and Internationally.  BLUE TRADING does not engage in the remanufacturing of cartridges or the manufacturing of cartridge parts or assemblies which are used or intended for use as substitutes for Lexmark's cartridges; nor does BLUE TRADING manufacture or trade in clone cartridges.  BLUE

TRADING's sole business is in the collection and resale of used genuine used and empty spent cartridges, which are acquired following a Lexmark authorized sale.

5. On information and belief, Lexmark is a Delaware corporation with its principal place of business at 740 New Circle Rd., Dept. 968, Lexington, KY 40511; and conducts business as a Foreign Corporation in the State of Florida with a registered agent office at CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

6. Lexmark is the assignee and the owner of each of the Patents-in-Suit.

### III.   JURISDICTION AND VENUE

7. This declaratory judgment action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under the patent laws of the United States.

9. This Court has personal jurisdiction over Lexmark because Lexmark is engaged in substantial and continuous business activities in this judicial district and because Lexmark, its agent and affiliates, have purposefully availed themselves of this forum by engaging in enforcement and licensing efforts related to the Patents-in-Suit, as well as by making express allegation of infringement against Plaintiff with respect to the Patents-in-Suit. Lexmark also conducts business as a Foreign Corporation in the State of Florida with a registered agent office at CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

10. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400.

### IV.   GENERAL ALLEGATIONS

11. There is an actual and justiciable controversy between BLUE TRADING and Lexmark. On August 20, 2010, Lexmark filed a patent infringement action against Ink

Technologies Printer Supplies, LLC and several other parties, including John Does 1-20, in the United States District Court for the Southern District of Ohio (hereinafter the "Ohio Action"). The case number is 10-CV-564-MRB and is still pending. The lawsuit does not as yet name BLUE TRADING, LLC., as a defendant.

12. On July 13, 2012, Lexmark served a subpoena on Blue Trading, LLC., requesting information that Lexmark purports to be relevant to Lexmark's infringement claims asserted in the Ohio Action. Lexmark's subpoena sought, among other things, information about BLUE TRADING's purchases, acquisitions, importations, and sales of Lexmark cartridges.

13. BLUE TRADING has fully complied with Lexmark's subpoena.

14. On February 5, 2013, Lexmark's attorneys followed up with a letter alleging that BLUE TRADING has infringed its patents and requesting that BLUE TRADING express whether it was interested in settling Lexmark's claims against BLUE TRADING. On February 25, 2013, Lexmark follow-up via e-mail stating that, "If BLUE TRADING is interested in settling this matter, it will need to provide the following documents in order for Lexmark to make a final demand offer". Lexmark's attorneys further stated in the same e-mail: "[w]e are filing the Amended Complaint in the coming weeks, and will name BLUE TRADING as a defendant if this matter is not resolved before then." Lexmark's attorneys made a similar threat in their February 5, 2013 letter to BLUE TRADING's attorneys, indicating "[w]e are filing the Amended Complaint in the U.S. District Court for the Southern District of Ohio shortly, and will name you as a defendant in this matter if we do not hear from you."

15. BLUE TRADING disputes that its business activities infringe, directly or indirectly, literally, contributorily, by way of inducement, or under the doctrine of equivalents, any valid claim of any of the Patents-in-Suit.

16. BLUE TRADING also asserts that any patent rights that Lexmark may have with respect to its products arising from the Patents-in-Suit have been exhausted by Lexmark's authorized first sale whether said first sale occurred domestically or internationally.

17. BLUE TRADING also assert that cartridges which were first sold and collected domestically does not constitute a patent infringement; likewise, any and all cartridges which were collected and acquired internationally and resold internationally, does not infringe Lexmark's patents in suit.

18. BLUE TRADING further assert that regardless of where a cartridge was first sold, if said sale occurred pursuant to a transaction which Lexmark authorized directly or indirectly, Lexmark's patent rights are exhausted, thus BLUE TRADING's acquisition and resale of the used cartridges internationally or domestically does not constitute an infringement of Lexmark's patents.

19. Lexmark continues to claim that any and all sales of used empty spent cartridges which were originally covered by any of the patents in suit, constitutes an infringement regardless of where the items were first sold.

20. Lexmark claims that the only acceptable proof that a cartridge was first sold domestically is a sales receipt from an authorized domestic retailer. Without such a proof of purchase, Lexmark treat all cartridges which BLUE TRADING collects or acquires domestically as cartridges first sold internationally. Lexmark's demand for proof of purchase exceeds the requisite level of proof.

21. Based on Lexmark's allegations in the Ohio Action, the only cartridges which were first sold internationally and resold within the United States constitute an infringement of the patents in suit. BLUE TRADING assert that its activities of importing used and spent

cartridges, whether said cartridges were first sold internationally or domestically, does not infringe Lexmark's patents because Lexmark's patent rights were exhausted by its authorized first sale of the cartridge.

22.     Lexmark seeks to benefit endlessly from its patent rights despite Lexmark's authorized first sale of the cartridges. Lexmark will not cease its allegations of patent infringement and claims for damages without judicial action.

23.     Accordingly, an immediate and substantial controversy exists in this District between BLUE TRADING and Lexmark with respect to whether any product which BLUE TRADING acquires and sells, domestically or internationally, infringes any valid claim of the Patents-in-Suit.

## V.     COUNT I

**(Declaratory Judgment of Non-Infringement of the Patents-in-Suit)**

24.     BLUE TRADING incorporates and realleges the preceding paragraphs as if set forth fully herein.

25.     Lexmark has asserted that BLUE TRADING's acquisition and resale, internationally and domestically, of cartridges covered by one or more of Lexmark's patents infringe the Patents-in-Suit.

26.     BLUE TRADING has not and does not infringe any valid claim of any of the Patents-in-Suit, directly or indirectly, literally, contributorily, by way of inducement, or under the doctrine of equivalents. BLUE TRADING also asserts that any patent rights that Lexmark may have with respect to its products arising from the Patents-in-Suit have been exhausted.

27.     An actual and justiciable controversy exists between BLUE TRADING and Lexmark regarding the asserted infringement of the Patents-in-Suit.

28. A judicial declaration of non-infringement of the Patents-in-Suit is necessary and appropriate to resolve this controversy.

29. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., BLUE TRADING is entitled to judgment from this Court that BLUE TRADING does not infringe any valid claim of any of the Patents-in-Suit.

## VI.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), BLUE TRADING hereby demands a trial by jury of all issues so triable in this action.

## VII.   PRAYER FOR RELIEF

WHEREFORE, BLUE TRADING respectfully requests that this Court enter judgment in its favor as follows:

a. Declaring that the initial authorized sale outside the United States of a patented item terminates all patent rights to that item;

a. declaring that BLUE TRADING has not, and does not, infringe any valid claim of the '032, '169, '231, '233, '661, '432, '378, '772, '291, '771, '015, '876, '383, '662, '489, '692, '031, '792, '510, '760, or '204 Patents, directly or indirectly, literally, or under the doctrine of equivalents;

b. declaring that BLUE TRADING has not induced, and does not induce, infringement of any valid claim of the '032, '169, '231, '233, '661, '432, '378, '772, '291, '771, '015, '876, '383, '662, '489, '692, '031, '792, '510, '760, or '204 Patents;

c. declaring that BLUE TRADING has not contributorily infringed, and does not contributorily infringe, any valid claim of the '032, '169, '231, '233, '661, '432, '378, '772, '291, '771, '015, '876, '383, '662, '489, '692, '031, '792, '510, '760, or '204 Patents;

      d.    declaring that any patent rights that Lexmark may have with respect to its products arising from the Patents-in-Suit have been exhausted by Lexmark's authorized first sale of the products;

      e.    enjoining Lexmark, its assigns, and all those in privity therewith from asserting the '032, '169, '231, '233, '661, '432, '378, '772, '291, '771, '015, '876, '383, '662, '489, '692, '031, '792, '510, '760, or '204 Patents against BLUE TRADING or any of its customers or suppliers for the sale, importation, and or sale after importation of used genuine empty spent toner cartridges;

      f.    declaring this case to be exceptional pursuant to 35 U.S.C. § 285, and awarding BLUE TRADING its reasonable attorneys' fees and costs to the fullest extent permitted by law; and

      g.    awarding BLUE TRADING such other and further relief as the Court may deem just and proper.

Dated: April 15th, 2013          ANDRÉ GIBSON, CHARTERED

/S/ André A. Gibson
André A. Gibson, Esquire
Florida Bar No. 0635529
AAGibson@Gibsontaxlaw.com
André Gibson, Chartered
115 NW 167th Street, Suite 201
North Miami Beach, FL 33169
(305) 652-4900 (Phone)
(305 653-4900 (Fax)
Attorney for Plaintiff, Blue Trading, LLC.